UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AXA CORPORATE SOLUTIONS DEUTSCHLAND a/s/o BMW AG,<br><br>Plaintiff,<br><br>v.<br><br>M/V "COURAGE," her engines, boilers, etc., *in rem*, FIDELIO LIMITED PARTNERSHIP INC.; AMERICAN ROLL-ON ROLL-OFF CARRIER LLC; TOTE SERVICE INC.; GOVLOG NV and FORD MOTOR COMPANY; *in personam*,<br><br>Defendants. | 16 Civ. 4063 (JMF) |

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GOVLOG NV'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE AND FORUM NON CONVENIENS

# TABLE OF CONTENTS

                                                                  **Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PREAMBLE ............................................................................................................................ 1

POINT I: PLAINTIFFS CANNOT INVOKE FORUM SELECTION CLAUSE ......................... 2

POINT II: THERE IS NO PERSONAL JURISDICTION OVER GOVLOG IN THE UNITED STATES ................................................................................................................... 8

POINT III: PENDANT JURISDICTION REQUIRES UNDERLYING PERSONAL JURISDICTION .................................................................................................................... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adler v. Dickson (The Himalaya)*,
  [1954] ..........................................................................................................................4

*APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*,
  890 F. Supp. 2d 360 (S.D.N.Y. 2012) ................................................................................4, 7

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
  480 U.S. 102 (1987) ..........................................................................................................9

*Atl. Container Line AB v. Volvo Car Corp.*,
  No. 14-cv-1811, 2014 WL 4730152 (S.D.N.Y. Sept. 22, 2014) ...........................................4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..........................................................................................................9

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ................................................................................................1

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ........................................................................................................1

*Dardana Ltd. v. Yugansknefiegaz*,
  317 F.3d 202 (2d Cir. 2003) ..............................................................................................8

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) ..................10

*Firefly Equities LLC v. Ultimate Combustion Co., Inc.*,
  736 F. Supp. 2d 797 (S.D.N.Y. 2010) ...............................................................................3

*Fort Knox Music Inc. v. Baptiste*,
  203 F.3d 193 (2d Cir. 2000) ..............................................................................................1

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..........................................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ..........................................................................................................8

*Leviton Mfg. Co., Inc. v. Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) ........................................................................2, 3, 4

*In re M/V DG HARMONY*,
   533 F.3d 83 (2d Cir. 2008)......................................................................................6

*Nanopierce Techs., Inc. v. Southridge Cap. Mgmt. LLC*,
   No. 02 Civ. 0767, 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003)............................3

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007)....................................................................................2

*In re Rickmers Genoa Litig.*,
   622 F. Supp. 2d 56 (S.D.N.Y. 2009).......................................................................5

*Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.*,
   291 F.3d 145 (2d Cir. 2002)................................................................................6, 7

*St., Sound Around Elecs., Inc. v. M/V Royal Container*,
   30 F. Supp. 2d 661 (S.D.N.Y. 1999).......................................................................4

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)..............................................................................................10

*Weingrad v. Telepathy, Inc.*,
   No. 05 Civ. 2024, 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2015) .....................2, 3, 6

# PREAMBLE

Defendant GOVLOG NV ("GovLog") is a foreign corporation that is incorporated in Belgium and does not conduct business in the United States. Under a general jurisdiction analysis, GovLog lacks sufficient contacts with the forum state to render it "at home" in New York. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). Further, by way of a specific jurisdiction analysis, GovLog lacks any meaningful contacts with New York that would permit New York to exercise personal jurisdiction under the long-arm statute. *See* N.Y. CPLR § 302(a). Personal jurisdiction is therefore lacking because due process requires minimum contacts between the party and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)) (internal quotation marks omitted). Plaintiffs attempt to circumvent the lack of personal jurisdiction by arguing that GovLog has waived personal jurisdiction through a forum selection clause in the Bill of Lading between GovLog and Defendant AMERICAN ROLL-ON ROLL-OFF CARRIER LLC ("ARC"). *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). However, the forum selection clause in the Bill of Lading is between GovLog and ARC and is limited to claims arising under the Bill; therefore Plaintiffs cannot invoke the forum selection clause. Ford's argument that Rule 4(k) confers personal jurisdiction over GovLog is also without merit because GovLog is not subject to personal jurisdiction anywhere in the United States. Finally, Ford's pendant jurisdiction argument also lacks merit because a party seeking to bring a claim via pendant jurisdiction must already have an underlying claim with personal jurisdiction, which Ford does not have.[1]

---

[1] Venue is nevertheless improper, and alternatively, that this case should be dismissed for forum non conveniens. GovLog concedes that the ARC Bill of Lading contains a New York forum clause, and will primarily address

1

## POINT I:

## PLAINTIFFS CANNOT INVOKE FORUM SELECTION CLAUSE

Plaintiffs focus their argument in opposition to dismissal primarily on a contract to which they are not a party. The Bill of Lading between ARC and GovLog includes a forum selection clause with respect to "[a]ny dispute under *this* B/L." (emphasis added). Despite the fact that each carrier is subject to their own Bill of Lading, Plaintiffs attempt to invoke a separate Bill of Lading in order to establish personal jurisdiction in this Court over GovLog. Their attempts to invoke this forum selection clause are without merit because they fail to satisfy the "closely situated" test for non-signatories to a forum selection clause agreement.

The enforceability of forum selection clauses depends upon satisfaction of a four-part test, as set forth in *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). Importantly, the third part of this test "asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* It is settled law that a non-signatory may be bound by a forum selection clause only where "the non-signatory is so closely related to the dispute ... that it becomes foreseeable that it will be bound." *Leviton Mfg. Co., Inc. v. Reeve*, 942 F. Supp. 2d 244, 257 (E.D.N.Y. 2013) (quoting *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2015)) (alteration in original). "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Weingrad*, 2005 WL 2990645, at *5 (citation and internal

---

Plaintiffs' and Ford's personal jurisdiction arguments in this reply brief. Plaintiffs and Ford assert only tort-based claims or cross claims against GovLog which are not entitled to third party beneficiary status under the ARC Bill of Lading. This distinction drawn by GovLog materially affects Govlog's potential exposure. Plaintiffs have asserted a total of $45.15 million in cargo loss or damage against vessel interests and GovLog. Ford asserts only contribution and indemnity cross claims. In the event Plaintiffs' direct claims and Ford's cross claims against GovLog are dismissed, Plaintiffs and Ford will then have to successfully prosecute their respective claims against vessel interests first before they could seek to proceed against GovLog. Despite the existence of the ARC New York forum clause, GovLog reasonably seeks to reduce its overall liability.

quotation marks omitted). Plaintiffs do not meet the "closely related" test as their relationship to the Bill of Lading between ARC and GovLog is at best remote and not foreseeable.

In cases where courts have found that non-signatories could enforce or invoke forum selection clauses, the connection between the non-signatories and the contract or the contracting parties has been clear. *See, e.g., Firefly Equities LLC v. Ultimate Combustion Co., Inc.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (individual "closely related" to signatory of forum selection clause when he himself signed agreement on behalf of company); *Nanopierce Techs., Inc. v. Southridge Cap. Mgmt. LLC*, No. 02 Civ. 0767, 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (CFO of company "closely related" to signing corporation to invoke forum selection clause). In *Weingrad v. Telepathy, Inc.*, which was cited by the Plaintiffs, the court was satisfied that defendants were "closely related" to the signatory of the forum selection clause because plaintiff alleged that the defendants "acted in concert," plaintiff's claims against the different defendants were "substantially identical," and the claims "all [arose] out of the defendant's relationships with each other." 2005 WL 2990645, at *6. Therefore, the forum selection clause applied to all defendants because it was alleged that the defendants acted the same, even though only one had actually signed the agreement in question. Here, there is no allegation of GovLog having "acted in concert" with ARC in regard to Plaintiffs' claims; and those claims are neither "substantially identical" nor did GovLog have any relationship with Plaintiffs.

In *Leviton Manufacturing Company v. Reeve*, the Court found that a non-signatory was not bound by a forum selection clause because of an attenuated relationship with the parties to the agreement. 942 F. Supp. 2d at 259 ("The vast majority of cases that have found a nonsignatory bound by a forum selection clause under the theory that they are 'closely related' to the dispute or the signatory, have done so where the non-signatory had a far more active role in the transaction

3

...."). Outside counsel who performed due diligence and opined on a transaction for a law firm was held to be not closely related to the parties and dispute in order to invoke the forum selection clause in the transaction agreement. The court found that the business relationship between the outside counsel and the law firm, and the fact that "[p]ractically speaking, [outside counsel] is arguably 'closely related' to the signatories" were insufficient bases to connect him to the forum selection clause. *Id.* at 258. The court concluded that this was not the type of business relationship other courts have found to satisfy the closely related test, and that there were no allegations that that defendants acted in concert. *Id.* at 259. Plaintiffs have similarly failed to establish the type of intimately close business relationship that courts have found satisfy the closely related test, nor have they alleged that all Defendants acted in concert here.[2]

In order to establish that they are closely situated, Plaintiffs argue that they are intended beneficiaries or that they raise claims that arise under the Bill of Lading between GovLog and ARC. "Federal courts have found 'two primary methods for actually binding an intended beneficiary to a bill of lading': (1) 'showing that the third party exhibited acceptance to be so bound' and (2) 'through an agency relationship with one of the contracting parties.'" *APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) (quoting *In re Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 72 (S.D.N.Y. 2009)); *see also Restatement (Second) of Contracts*, Sec. 304. Plaintiffs have not exhibited acceptance to be bound by GovLog's Bill of

---

[2] Plaintiffs rely on two cases to support the proposition that third-party beneficiaries of bills of lading are entitled to enforce jurisdiction clauses. These cases are misleading because in both situations, the court agreed to enforce a jurisdiction clause on the basis of a "Himalaya clause". *See Atl. Container Line AB v. Volvo Car Corp.*, No. 14-cv-1811, 2014 WL 4730152, at *4 (S.D.N.Y. Sept. 22, 2014); *St., Sound Around Elecs., Inc. v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999). The Himalaya clause arose as a result of a decision of the English Court of Appeal in the case of *Adler v. Dickson (The Himalaya)*, [1954] 2 Lloyd's Rep. 267 [1955] 1 Q.B. 158. A typical Himalaya clause provides that all immunities, limitations and defenses to which the ocean carrier is entitled are equally applicable to all of its servants, agents and independent contractors (including, for example, stevedores and terminal operators). Plaintiffs were never agents or subcontractors of ARC who issued the Bill of Lading contract and are not entitled to invoke or enforce a jurisdiction clause here due to a Himalaya clause. Both of these cases therefore are distinguishable.

4

Lading, and the fact that each separate cargo owner is subject to their own Bill of Lading with ARC undermines the suggestion that they would be bound by GovLog's Bill of Lading and not their own. There is additionally no agency relationship between Plaintiffs and GovLog or ARC. For this reason, Plaintiffs concede that in order to be considered intended beneficiaries—or for that matter at all "closely situated" in order to enforce the forum selection clause—they must establish an ability bring a claim or enforce a provision of the Bill of Lading.

In a vain effort to make this mandatory showing, Plaintiffs rely solely on a "dangerous goods" provision of GovLog's Bill of Lading to support their argument that they could bring a claim or enforce a provision of the Bill of Lading, in order to then invoke the Bill of Lading's forum selection clause. Plaintiffs argue that their claims arise under Clause 20 of the Bill of Lading between GovLog and ARC. This boilerplate "dangerous goods" clause is said by Plaintiffs to mirror Section 4 of the Carriage of Goods By Sea Act ("COGSA"). This COGSA provision has been interpreted by courts to allow claims by innocent cargo against shippers of dangerous cargo. *See, e.g., Rickmers*, 622 F. Supp. 2d at 66–69. However, this argument lacks merit due to two fatal flaws in that Plaintiffs' claims are not contractual and the Ford vehicle is not dangerous.

First, Plaintiffs cannot establish that their claims arise under GovLog's Bill of Lading. Plaintiffs' argument requires an inferential leap to assume that a claim pursuant to COGSA and Clause 20 of GovLog's Bill of Lading are one-and-the-same. In what is already a convoluted and unsupportable argument to invoke a forum selection clause in a contract to which they are not parties, Plaintiffs assert that they may enforce a provision of the Bill of Lading between GovLog and ARC merely because it has similar language to a provision in COGSA and would therefore be treated by courts similarly to COGSA. However, Plaintiff's claim for strict liability depends entirely on COGSA, not the Bill of Lading. The claims against GovLog for strict liability by

5

Daimler and BMW do not mention the contractual provision and only discuss the basis for strict liability under Section 4 of COGSA. *See* Docket No. 53 at 12–13, 16 Civ. 4125 (JMF) and Docket No. 77 at 12–13, 16 Civ. 4063 (JMF). Strict liability under COGSA is a statutory claim, not a contractual claim. The Second Circuit determined that Section 4(6) of COGSA "applies *ex proprio vigore* to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries." *Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.*, 291 F.3d 145, 153 (2d Cir. 2002) (quoting *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 100 (2d Cir.1999)). In other words, the basis for strict liability is statutory, and it is unnecessary and irrelevant to rely on a contractual provision for a claim that is based on Section 4(6) of COGSA. Courts treat claims under COGSA as statutory claims and apply principles of statutory interpretation, without discussing related contractual language. *See, e.g.*, *In re M/V DG HARMONY*, 533 F.3d 83, 86 (2d Cir. 2008) (discussing strict liability claim made "under § 4(6) of [COGSA], 46 U.S.C. § 30701 note"); *Senator Linie Gmbh & Co. Kg*, 291 F.3d at 154 (applying statutory interpretation rules to COGSA claim). Plaintiffs cannot recast this claim as a contractual claim, which on its face applies only to GovLog and ARC, for the self-serving purpose of invoking a forum selection clause. Plaintiffs' strict liability claim arises under COGSA and not the Bill of Lading between GovLog and ARC, therefore they cannot claim that their rights are "completely derivative" or "predicated upon" the Bill of Lading when they could raise a COGSA claim without the provision in the Bill of Lading. *Weingrad*, 2005 WL 2990645, at *5.

Second, vehicles stowed as cargo aboard roll-on/roll-off ships[3] are not "dangerous" goods for the purposes of COGSA. Even if Plaintiffs could potentially establish that their claim arises

---

[3] "Roll-on/roll-off" vessels, also known as "ro-ro's," are a particular type of ship designed for the ocean carriage of wheeled cargo, such as automobiles, trucks, mobile homes, etc. ARC's website, www.arcshipping.com, has excellent color photographs of its vessels and associated cargo operations. Stevedores are hired to drive the cargo aboard at the load port and then drive them off at the discharge port, hence the term "roll-on roll-off" or "ro-ro."

under the Bill of Lading, application of the dangerous goods provision is improper because the Ford vehicle is plainly not "dangerous." Courts consider whether a particular piece or type of cargo can be "dangerous" for purposes of application of Section 4 of COGSA only if that item is identified as such in the International Maritime Dangerous Goods Code ("IMDG Code"). *See Senator Linie Gmbh & Co. Kg.*, 291 F.3d at 150–51 (considering IMDG Code to determine whether cargo constitutes dangerous goods); *APL Co. Pte. Ltd.*, 890 F. Supp. 2d at 364 (explaining that chemical is classified as corrosive "under the [IMDG] Code, promulgated by the International Maritime Organization of the United Nations"). Special Provision 961 to the IMDG Code states: "Vehicles and equipment are not subject to the provisions of this code if they are stowed on a roll-on/roll-off ship...." It is undisputed that the Ford vehicle was stowed aboard M/V Courage, a ro-ro ship, and therefore it does not qualify as a dangerous good. Both Clause 20 in the Bill of Lading and Section 4 of COGSA apply to dangerous goods, and Plaintiffs have not established that the Ford vehicle is dangerous. Special Provision 961 to the IMDG specifically states that vehicles stowed aboard ro-ro ships are not dangerous goods. Therefore, Plaintiff's reliance on this provision to argue that their claims arise out of GovLog's Bill of Lading or render Plaintiffs closely situated to GovLog's Bill of Lading is misplaced because the assumption that the Ford vehicle is a dangerous good is improper and without any basis in law or fact.[4]

The relationship between Plaintiffs and GovLog's Bill of Lading with ARC is too attenuated to satisfy the closely situated test. Plaintiffs must establish that their rights are derivative or predicated upon the Bill of Lading, but they fail to establish that they could raise a

---

[4] The IMDG Code does identify automobiles stowed inside containers as being potentially "dangerous," but as mentioned previously it is undisputed that the Ford Escape was loaded aboard M/V Courage, a known ro-ro ship. Plaintiffs and Ford erroneously identified the Escape as being "dangerous" because they failed to make this distinction. Tens of thousands of used and new automobiles are transported by sea to the United States every year and so categorizing this cargo—which is no different from the motor vehicles being driven every day—is contrary to common sense. Allegations that the Escape is "defective" does not make the Escape "hazardous" or otherwise "dangerous" cargo pursuant to the IMDG Code, as that term is defined under COGSA.

7

claim under the Bill of Lading between GovLog and ARC. They are subject to their own bill of lading with ARC and are plainly not intended beneficiaries of a separate bill of lading. Under their theory of "closely related," any cargo interest or shipper could invoke contractual clauses against any other cargo interest or shipper as long as their respective cargoes were being loaded aboard the same ship, regardless of another contractual relationship with the carrier or there being no contractual relationship. This theory lacks a limiting principle, and would vitiate the intended certainty of forum selection clauses. The forum selection clause between GovLog and ARC is intended to govern contractual disputes between GovLog and ARC, as evidenced by its plain language. There is nothing in the language of the clause or agreement that would suggest GovLog intended or would foresee other cargo interests being bound by the same forum selection clause, especially since the Ford Escape is not "dangerous" pursuant to the IMDG Code. Granting third party beneficiary status to any entity aboard the vessel would extend the forum selection clause beyond its clear and unambiguous intention, and potentially with no limitation provided they had cargo aboard the same vessel. For these reasons, Plaintiffs cannot invoke ARC's forum clause.

## POINT II:
### THERE IS NO PERSONAL JURISDICTION OVER GOVLOG IN THE UNITED STATES

Ford argues that Fed. R. Civ. P. 4(k)(2) applies to authorize this Court's exercise of personal jurisdiction over GovLog. This rule applies where a defendant is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is not inconsistent with the United States Constitution and laws. In order to invoke Rule 4(k)(2), Ford must establish that GovLog has sufficient contacts with the United States as a whole to comport with due process requirements. *See Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003). In order to satisfy due process concerns, Ford must establish either general or specific

personal jurisdiction over GovLog. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8–9 (1984). Ford mischaracterizes GovLog's contacts as being sufficient for specific jurisdiction. GovLog has not purposefully availed itself of doing business in the United States, as its actions related to the cargo were not directed at the United States. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). GovLog's activities were completed in Belgium. GovLog contracted with ARC in Belgium and performed only in Antwerp, Belgium. The only connection with the United States is fortuitous in that the shipment was unilaterally taken by the carrier ARC to the United States. GovLog has no ability to control the direction of the Vessel.[5] Ford misconstrues GovLog's role in arguing that GovLog purposefully directed the shipment to the United States. GovLog has no say whatsoever in the shipment's destination; this determination is made solely by the owner of the vehicle, in this case Mary Smith. Ford's case citations all rely on a "stream of commerce" analysis for establishing specific jurisdiction. In *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987), a plurality of the Supreme Court determined that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." The Court cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115. Ford's reliance on the Bill of Lading between ARC and GovLog and the unilateral decision by Mrs. Smith to send the Ford vehicle to the United States is an insufficient basis to establish personal jurisdiction over GovLog.[6]

---

[5] The Bill of Lading contract contains a "Liberties" clause which authorizes ARC to unilaterally alter the course of the Vessel for its convenience and benefit.

[6] GovLog continues to assert that even if there were sufficient minimum contacts, the exercise of personal jurisdiction over GovLog is unfair and unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The burden on a foreign company being forced to litigate in the United State is significant. Further, none of the actions alleged in the complaint or that purported to give to this cause of action occurred in New York or affected New York.

# POINT III:

## PENDANT JURISDICTION REQUIRES UNDERLYING PERSONAL JURISDICTION

The doctrine of pendant/supplemental jurisdiction is plainly inapplicable here. As quoted by Ford, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' *onto that claim* other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 481 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (emphasis added) (citation and internal quotations omitted). Ford does not seek to piggyback additional claims onto an existing claim against GovLog. Ford glosses over the fact that the party asserting pendant jurisdiction must have its own independent basis for personal jurisdiction over the defendant in the district court in order to bring additional claims. The "common nucleus of operative fact" test applies to bring in additional claims where there is already personal jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The forum selection clause in the Bill of Lading governs the contractual relationship between GovLog and ARC only. Ford is not entitled to rely on ARC's basis for personal jurisdiction in order to bring claims against GovLog. Ford cites no cases authorizing supplemental jurisdiction where the party has no independent basis for jurisdiction. Because Ford cannot establish its own underlying basis for personal jurisdiction, pendant claims cannot be brought against GovLog.

## CONCLUSION

For the foregoing reasons, GovLog's motion to dismiss for lack of personal jurisdiction and lack of venue should be granted, or alternatively, GovLog's motion to dismiss for forum non conveniens should be granted.

Date: New York, NY
      February 24, 2017

          Respectfully submitted,

          COZEN O'CONNOR
          Attorneys for Defendant
          GOVLOG NV

By: _____
          David Y. Loh
          William Lesser
          45 Broadway Atrium 16th Floor
          New York, New York 10006
          Tel: (212) 509-9400
          Fax: (212) 509-9492