USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/19/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
BMW OF NORTH AMERICA LLC,                                             :
:
                           Plaintiff,           :     16-CV-4063 (JMF)
:
       -v-                                                           :
:
M/V COURAGE, her engines, tackle, boilers, etc. *in rem*,             :
et al.,                                                               :
:
                           Defendants.         :
:
------------------------------------------------------------------    :
                                                                                              X
:
HDI GLOBAL SE a/s/o DAIMLER AG,                                       :
:
                           Plaintiff,           :
:
       -v-                                                           :
:     16-CV-4125 (JMF)
M/V COURAGE, her engines, tackle, boilers, etc. *in rem*,             :
et al.,                                                               :
:
                           Defendants.         :
:
----------------------------------------------------------------------X
:
INTERNATIONAL AUTO LOGISTICS, INC.                                    :
:
                           Plaintiff,           :
:
       -v-                                                           :     16-CV-4149 (JMF)
:
M/V COURAGE, her engines, tackle, boilers, etc. *in rem*,             :     <u>OPINION AND ORDER</u>
et al.,                                                               :
:
                           Defendants.         :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       On June 2, 2015 a fire broke out on board an American-bound vessel damaging or destroying millions of dollars' worth of motor vehicles. These three related cases are brought by

the owners and insurers of those motors vehicles: Axa Corporate Solutions Deutschland ("Axa"), BMW AG ("BMW"), HDI Global SE, Daimler AG ("Daimler"), and International Auto Logistics ("IAL", collectively, with Axa, BMW, and Daimler, "Plaintiffs"). Specifically, each brings suit against different arrays of the following entities: the shipper of the goods, GovLog NV ("GovLog"); the time charterer/operator of the vessel, American Roll-Off Carrier LLC ("ARC"); the registered owner of the vessel, Fidelio Limited Partnership, Inc. ("Fidelio"); the technical manager of the vessel, Tote Service Inc. ("Tote"); a charterer of certain spaces on the vessel, Wallenius Wilhelmsen Logistics ("WWL" and, together with ARC, Fidelio, and Tote, the "Vessel Interests"); the owner of the vehicle suspected of causing the fire, Mary Smith, and her employer, the United States; and the manufacturer of Smith's vehicle, Ford Motor Company ("Ford"). (*See* 16-CV-4063 Docket No. 77 ("Fifth Am. Compl."); 16-CV-4125 Docket No. 53 ("Daimler Compl."); 16-CV-4149 Docket No. 55 ("IAL Compl.")).[1] As relevant here, both Ford and the Vessel Interests, in turn, bring cross-claims against GovLog. (Docket No. 90 ("Ford Crossclaims") ¶ 169; Docket No. 91 ("Vessel Interest Crossclaims") ¶¶ 194-200).

On January 20, 2017, GovLog moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss most (but not all) of the claims and cross-claims against it for lack of personal jurisdiction, improper venue, and on *forum non conveniens* grounds. (Docket No. 84). On May 15, 2017, the Court issued a "bottom-line" Order indicating that for reasons to be provided in a forthcoming Opinion, GovLog's motions were denied. (Docket No. 118). This is that Opinion.

---

[1] Unless otherwise noted, all docket references are to Docket No. 16-CV-4063.

**BACKGROUND**

The relevant facts, taken from the pleadings and affidavits except as otherwise noted, are viewed in the light most favorable to the non-moving parties — that is, Plaintiffs and Cross-Claimants. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

GovLog is a Belgian corporation with headquarters in Antwerp that has contracted with the United States Government to ship vehicles and other personal property of U.S. Government employees to the United States. (Fifth Am. Compl. ¶¶ 9, 84-85; Vessel Interest Crossclaims ¶¶ 167-68, 171). In March 2015, a division of the U.S. Department of State issued a tender for bids to perform logistics services for Government employees shipping goods to the United States between May 2015 and April 2016. (Docket No. 115 ("Pls. Suppl. Ltr."), at 2). GovLog bid on the project and, in May 2015, it was awarded a contract to transport property between Europe and New York, Baltimore, Miami, and Seattle. (Pls. Suppl. Ltr., Ex. 3). Soon thereafter, GovLog approached ARC, the time charterer/operator of the M/V Courage — an ocean-going "roll on roll off" car carrier flying the flag of the United States — to ship a 2002 Ford Escape owned by Mary Smith, a U.S. Government employee, from Antwerp, Belgium, to Baltimore, Maryland. (Fifth Am. Compl. ¶ 20; Vessel Interest Crossclaims ¶¶ 168-175; Docket No. 103 ("Santianna Decl.") ¶¶ 2, 7). Plaintiffs allege that, during the M/V Courage's voyage to the United States in June 2015, Smith's Ford Escape caused a fire to break out on board the vessel, which caused damage to 187 BMW automobiles at a cost of $7.3 million; 757 Daimler vehicles at a cost of $33.1 million; and 221 personally owned vehicles being shipped by IAL worth approximately $4.75 million. (Fifth Am. Compl. ¶¶ 15, 18-20; Daimler Compl. ¶ 19; IAL Compl. ¶ 66). In addition to the losses sustained by Plaintiffs, the Vessel Interests allege damages to the ship (and other expenses as a result of the fire) in the amount of $35 million. (Vessel Interest Crossclaims ¶ 200).

GovLog has been shipping cargo with ARC for over twenty years and, since 2003, has shipped approximately 450 vehicles a year with ARC. (Santianna Decl. ¶ 5; *see also* Vessel Interest Crossclaims ¶ 168). Each shipment, including the shipment of the Escape, is governed by a Bill of Lading and ARC's standard terms and conditions, which have not changed since 1999. (Santianna Decl. ¶¶ 8-10). Significantly, the Bill of Lading governing the Escape shipment includes a jurisdictional clause pursuant to which the parties agreed that "[a]ny dispute arising under this [Bill of Lading] shall be decided in the U.S. Federal Court in the City of New York to the exclusive jurisdiction of which the Carrier and the Merchant submit themselves." (Fifth Am. Compl. ¶ 21; Santianna Decl. Ex. 3 ("Bill of Lading") Clause 5). The Bill of Lading defines "Merchant" to include GovLog (as the "Shipper") and "Carrier" to include both ARC and Fidelio (as the "owner of the ship"). (Bill of Lading, Clause 2). Notably, the Bill of Lading also includes a so-called "Himalaya Clause," which protects the Carrier's agents and servants to the same extent that the Carrier is protected. (*Id.*, Clause 15 (providing that "every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such Servant or Agent of the Carrier")). Finally, to the extent relevant here, the Bill of Lading includes a provision regarding "Dangerous Cargo," which states that "the Merchant (whether aware of their nature or not) shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment." (*Id.*, Clause 20).

Plaintiffs assert claims against (1) the Vessel Interests, for breach of the contract of carriage, relying upon the provisions of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq.*; (2) the United States, as Mary Smith's employer, pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq.*, alleging breaches under COGSA and for negligence; (3) Ford, for product liability and negligence; and (4) GovLog, for violations of COGSA and for

4

negligence. (Fifth Am. Compl. ¶¶ 41, 46, 51, 55, 61, 68, 79, 83, 105). Both Ford and the Vessel Interests, in turn, bring cross-claims against GovLog. Each asserts cross-claims for contribution or indemnity; in addition, the Vessel Interests seek recovery for their direct damages as a result of the fire. (Ford Crossclaims ¶¶ 169-70; Vessel Interest Crossclaims ¶¶ 161-203). As noted, GovLog moves, pursuant to Rule 12(b), to dismiss all claims against it for a lack of personal jurisdiction, improper venue, and on *forum non conveniens* grounds. Plaintiffs, Ford, and the Vessel Interests all oppose GovLog's motion.

## LEGAL STANDARD

In the absence of discovery or an evidentiary hearing, a plaintiff seeking to defeat a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for absence of personal jurisdiction or pursuant to Rule 12(b)(3) for improper venue need only make a *prima facie* showing that jurisdiction exists and venue is proper. *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Such a showing "entails making 'legally sufficient allegations . . . ,' including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists and venue is proper. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). *See generally Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013). A court must "view[] all facts in the light most favorable to the non-moving party." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

## DISCUSSION

As noted, GovLog moved to dismiss all claims against it for a lack of personal jurisdiction, improper venue, and on *forum non conveniens* grounds. The Court will address each of GovLog's arguments in turn.

**A. Personal Jurisdiction**

Stray language in its briefing aside, GovLog effectively concedes that personal jurisdiction exists with respect to ARC's contract claims. (Docket No. 86 ("GovLog Mem."), at 24). That is for good reason: The Bill of Lading between GovLog and ARC contains a forum selection clause in which GovLog agreed that the federal courts in New York City would be the "exclusive jurisdiction" for "[a]ny dispute arising under this [Bill of Lading]." (Bill of Lading, Clause 5). GovLog does not argue, and the Court sees no basis to find, that this forum selection clause is invalid or inapplicable. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10 (1972) (holding that forum selection clauses in the admiralty context "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09-CV-7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use."). It follows that there is plainly personal jurisdiction with respect to ARC's contract claims. *See, e.g.*, *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC,* No. 11-CV-6804 (PAE), 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012) (noting that if a forum selection clause is both valid and applicable, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process").

In light of the fact that a plaintiff (or cross-claimant) "must establish the court's jurisdiction with respect to *each* claim asserted," *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004), however, GovLog does challenge the rest of the claims brought against it in these cases — namely, ARC's tort claims and the other parties' claims and cross-claims. (GovLog Mem. 4-9). With respect to ARC's other claims, the Second Circuit has held that a

contract-oriented forum selection clause does extend to tort claims between the parties if the claims "ultimately depend on the existence of a contractual relationship between the signatory parties." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) (internal quotation marks omitted). Put another way, "[c]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Id.* at 724-25. With respect to the claims against GovLog brought by the other parties, the law is clear that "a broad forum selection clause governing 'all' claims arising under [a] bill of lading" — like the forum selection clause here — "extends to non-signatories connected to the carriage even where those claims arise outside the four corners of the contract itself (i.e., tort or bailment liability)." *AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V ZAPOTECA*, 844 F. Supp. 2d 440, 442 (S.D.N.Y. 2012); *see also Thyssen Inc. v. M/V Markos N,* No. 97–CV–6181, 1999 WL 619634, at *4 (S.D.N.Y. Aug. 16, 1999) (Mukasey, J.) ("[C]ourts have held consistently that a 'broad' arbitration clause governing 'all disputes' arising under the charter covers even a dispute involving a nonsignatory."). Significantly, however, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Nanopierce Techs., Inc. v. Southbridge Capital Mgmt.,* No. 02-CV-0767 (LBS), 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003). "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Weingard v. Telepathy, Inc.*, No. 05-CV-2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (Mukasey, J.) (internal quotation marks omitted).

Applying those standards here, there is plainly personal jurisdiction with respect to ARC's tort claims against GovLog as they involve "the same operative facts" as ARC's contract claim. *Magi XXI*, 714 F.3d at 724. Similarly, the Court easily concludes that Fidelio and Tote — two of the other Vessel Interests — are entitled to rely on the forum selection clause in the

7

Bill of Lading. Fidelio is the registered owner of the vessel, and thus falls within the express definition of "Carrier" in the Bill of Lading, entitling it to invoke the forum selection clause. (*See* Bill of Lading, Clause 2 (including "the owner of the ship" as part of the definition of "Carrier"); Bill of Lading, Clause 16 ("The defenses and limits of liability provided for in this B/L shall apply in any action against the Carrier whether the action be found in contract or in [t]ort.")). And the Bill of Lading's "Himalaya Clause," which brings all agents of the Carrier within the protections afforded in the Bill of Lading (*see* Bill of Lading, Clause 15), granted Tote, which was hired to assist in crewing the vessel, the right to enforce the forum selection terms of the agreement to the same extent as ARC and Fidelio. *See, e.g.*, *Atl. Container Line AB v. Volvo Car Corp.*, No. 14-CV-1811 (CM), 2014 WL 4730152 (S.D.N.Y. Sept. 22, 2014) (noting, with respect to a similar Himalaya Clause, that the "expansive contract language shows that various persons and entities would be involved in its performance" and that a party that "was an intended beneficiary of [the Himalaya Clause] is entitled — indeed, required — to sue in this district per the forum selection clause"); *Salis v. Am. Exp. Lines*, 566 F. Supp. 2d 216, 224 (S.D.N.Y. 2008) (analyzing a nearly identical Himalaya Clause and concluding that a Carrier's agent was subject to the Bill of Lading's forum selection clause), *aff'd in part, vacated in part on other grounds*, 331 F. App'x 811 (2d Cir. 2009). Accordingly, ARC, Fidelio and Tote may invoke the forum selection clause to establish jurisdiction over GovLog.

Whether Plaintiffs can rely on the forum selection clause to establish personal jurisdiction over GovLog is a closer question. But the Court need not, and does not, reach that question, because personal jurisdiction is established with respect to Plaintiffs' claims, not to mention the claims of Ford and WWL, pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. "This Rule, which is commonly known as the federal long-arm statute, permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United

States as a whole." *Havlish v. Royal Dutch Shell PLC*, No. 13-CV-7074 (GBD), 2014 WL 4828654, at *4 (S.D.N.Y. Sept. 24, 2014). Rule 4(k)(2) establishes personal jurisdiction "where (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercising jurisdiction is consistent with the United States Constitution and laws." *Id.* (internal quotation marks and footnote omitted). To determine whether "[d]ue process permits a court to exercise personal jurisdiction over a non-resident," a court must "ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction . . . . and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Porina v. Marward Shipping Co. Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks omitted). That calls for an inquiry into "the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test," and into whether "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). Notably, the operative question under Rule 4(k)(2) is whether GovLog "has sufficient affiliating contacts with the United States in general, rather than with New York in particular." *Porina*, 521 F.3d at 127.

Assuming that GovLog is correct and that it is not subject to jurisdiction here on any other basis with respect to the remaining claims, the first two prongs of Rule 4(k)(2) are easily satisfied. First, these cases are brought under maritime law and, thus, "'arise[] under federal law' for the purposes of Rule 4(k)(2)." *Porina*, 521 F.3d at 127. Second, "[b]y arguing that it has no presence in the United States and did not engage in transactions in New York sufficiently related to the instant dispute to constitute 'transacting business' jurisdiction," GovLog "has in fact established the [second] necessary predicate for personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2)." *Peterson v. Islamic Republic of Iran*, No. 10-CV-4518 (KBF), 2013 WL

9

1155576, at *17 (S.D.N.Y. Mar. 13, 2013). Finally, the Court finds that there are sufficient minimum contacts between GovLog and the United States for it to exercise jurisdiction over the remaining parties' claims. These cases arise out of a fire allegedly caused by a vehicle belonging to an American citizen and manufactured by an American company that GovLog agreed to ship, pursuant to a contact with the U.S. Government, to the United States on a U.S.-flagged vessel, using a Bill of Lading in which GovLog agreed to the exclusive jurisdiction of a U.S. court. The fact that the cargo was destined for the United States was not "fortuitous," or based solely on a "unilateral decision by [Mary] Smith," as GovLog claims. (GovLog Mem. 3, Docket No. 106, at 9). Instead, Smith's Ford Escape was shipped to the United States aboard the M/V Courage because that is where GovLog, as the vehicle's shipper, had contractually committed to send it after successfully bidding for a contract to ship goods to the United States in a tender process conducted by the U.S. Government. (Vessel Interest Crossclaims ¶¶ 167-72, 189-91; Fifth Am. Compl. ¶ 21; *see also* Pls. Suppl. Ltr., Ex. 3). Put simply (and only slightly facetiously), the only way in which these cases could be more closely tied to the United States is if the shipment had involved apple pie rather than vehicles.

Additionally, the Court finds that "the assertion of personal jurisdiction is reasonable under the circumstances" present here. *Porina,* 521 F.3d at 127 (internal quotation marks omitted). In assessing the reasonableness of a court's exercise of specific jurisdiction, relevant factors to consider include "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief." *Licci,* 732 F.3d at 170. Notably, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 173. GoLov cannot carry that "heavy burden" here. *Tymoshenko v. Firtash,* No. 11-CV-2794 (KMW), 2013 WL 1234943, at *5 (S.D.N.Y. Mar. 27, 2013). First, although GovLog is a foreign company, "[t]he mere fact that a defendant is foreign

10

and would have to travel to New York is insufficient to defeat a finding of reasonableness" — particularly where, as here, the defendant has already consented to a United States court's exclusive jurisdiction. *Peterson*, 2013 WL 1155576, at *15. Second, the United States has a significant interest in litigation concerning a U.S.-flagged vessel bound for the United States that was the result of a tender process involving the United States Government. And finally, "bringing [GovLog] before this court will enable efficient resolution of [all parties'] claims . . . in a single proceeding." *Peterson*, 2013 WL 1155576, at *18. Thus, the Court finds that the exercise of personal jurisdiction is reasonable and comports with the requirements of due process.

None of the cases relied upon by GovLog calls for a different result. For example, while the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) found that "fortuitous" contacts and the "unilateral activity of another party or a third person" were insufficient to establish jurisdiction, it concluded that "where the contacts proximately result from actions by the defendant himself," jurisdiction is proper if those contacts "create a 'substantial connection' with the forum." Here, as noted above, GovLog's contacts with the United States with respect to the underlying controversy were neither fortuitous nor merely the product of another party's actions. Instead, GovLog pursued specific actions directed at the United States — including bidding for business directed at ports in the United States, contracting with the U.S. Government for the shipment of property that included the Ford Escape, agreeing to litigate in the United States, and electing to ship the vehicle aboard a U.S.-flagged vessel. In so doing, it "purposefully availed itself of the privilege of doing business" in the United States. *Licci*, 732 F.3d at 170. For similar reasons, the Second Circuit's decision in *Porina* is also consistent with the Court's analysis and conclusion. There, the Court found insufficient contacts for the defendant under the "more stringent" general jurisdiction standard because a third party, not the defendant, was solely responsible for each of the vessel's trips to the United States.

11

*Porina*, 521 F.3d at 128-29.  Crucial to the *Porina* Court's holding was that the defendant ship owner in the case, unlike GovLog here, had no discretion regarding whether to avail itself of the United States as a forum.  *Id.*  Moreover, aside from visits by the vessel to the United States, the defendant in *Porina* had none of the other connections to the United States that establish jurisdiction over GovLog here.  *See id.*; *see also Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (finding personal jurisdiction in Louisiana where the carrier "agree[d] to secure a vessel with a satisfactory onboard loading crane that it knew would be used to unload cargo in Louisiana" as the carrier "reasonably should have anticipated that its failure to meet its contractual obligations might subject it to suit there.").

In short, the Court concludes that it has personal jurisdiction over GovLog for all claims that have been asserted against it in these actions.

### B.  Venue and *Forum Non Conveniens*

GovLog's remaining arguments — that the claims against it should be dismissed either for improper venue or on *forum non conveniens* grounds (GovLog Mem. 16-22) — are easily rejected.  First, as the non-moving parties observe (Docket No. 97, at 16; Docket No. 99, at 19; Docket No. 101, at 22) — and GovLog does not particularly dispute in its reply — venue is plainly proper pursuant to Title 28, United States Code, Section 1391(b)(3), which provides that a case may be brought in "any judicial district in which *any* defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3) (emphasis added).  Second, the *forum non conveniens* doctrine is a discretionary device that permits a court, "in rare instances," to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim."  *Carey v. Bayerische Hypo–und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004).  Where, as here, there is a valid forum selection clause, the analysis turns on "whether there are public interest considerations" — such as, "the administrative difficulties flowing from court congestion[,] the local interest in having localized controversies decided at home[, and] the

interest in having the trial of a diversity case in a forum that is at home with the law" — "that weigh against its enforcement." *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-CV-8089 (RJS), 2014 WL 1116875, at *3, 6 (S.D.N.Y. Mar. 18, 2014). These factors "will rarely defeat . . . a motion to dismiss under *forum non conveniens*, and thus the practical result is that forum-selection clauses should control except in unusual circumstances." *Id.* at *6 (brackets and internal quotation marks omitted).

These cases do not present any sort of "unusual circumstances" that would override the forum selection clause to which GovLog agreed. In fact, the public interest factors mostly weigh against transferring the case to Belgium, GovLog's preferred forum. First, the Court has exclusive jurisdiction over the ARC-GovLog dispute pursuant to the Bill of Lading. Because "that part of the litigation must remain in New York, it would be quite inconsistent with the purposes of *forum non conveniens* to dismiss the remaining claims under that doctrine." *Aguas Lenders Recovery Group LLC v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009). Second, "[a]s a number of the issues in these actions are and would be overlapping . . . the risk of inconsistent judgments arises" if the other claims were brought in a different forum. *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 267 (S.D.N.Y. 2007). And third, there is little question that United States law will govern in these cases. *See, e.g.*, *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 100-01 (2d Cir. 1999) ("COGSA . . . applies *ex proprio vigore* to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries. Accordingly, because in this case the cargo was shipped from Japan to the United States, COGSA applies." (citation and footnote omitted)); *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir. 1996) (noting the "importance of the law of the flag, which overbears most other connecting events in determining applicable law" (internal quotation marks omitted)). Accordingly, GovLog falls well short of showing that these cases should be dismissed on *forum non conveniens* grounds.

## CONCLUSION

For the reasons stated above, GovLog's motions to dismiss on the grounds of a lack of personal jurisdiction, improper venue, and *forum non conveniens* were DENIED.

SO ORDERED.

Dated: May 19, 2017
       New York, New York

_____
JESSE M. FURMAN
United States District Judge